H. A. TRUE, Jr., and Jean D.
True, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. C81–158.

United States District Court,
D. Wyoming.

Sept. 27, 1982.

R. Stanley Lowe, William H. Brown, Claude W. Martin, Casper, Wyo., and Claude M. Maer, Jr., Denver, Colo., for plaintiffs.

Robert L. Baker and Michael Chun, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KERR, District Judge.

The question for consideration in this case is what value should be assessed for gift tax purposes to the gifts of 8% restricted interest in True Oil Company to each of four children made by the taxpayer plaintiffs. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

Plaintiffs were sole owners in a partnership known as True Oil Company (True Oil). True Oil is engaged in the exploration of unproven oil and gas leases, otherwise known as "wildcatting." This type of business is very risky. In the summer of 1973 arrangements were made to transfer interests in True Oil to plaintiffs' four children. On August 1, 1973 8% restricted interest in True Oil was transferred to each of four children as a gift. The gift at that time was oral, but was later memorialized by way of written amendment to the original partnership agreement. Said amendment was effective August 1, 1973.

Relevant provisions of the partnership agreement include: an obligation on the part of the partners to make contributions of capital, when necessary, in proportion to the partners' interest; required sale to other partners if a substantial amount of each partners' time is not devoted to the partnership; general restrictions on disposal of the partnership interest; and a restriction on transferability of the interest which requires a withdrawing partner to sell his

interest at book value to the remaining partners and requires the remaining partners to purchase said interest at book value. Undisputed testimony at trial revealed that the four children were aware of the restrictions to be placed upon their gifts, and agreed to abide by those restrictions as of the date of transfer, August 1, 1973.

The gifts were properly reported by plaintiffs through timely filed gift tax returns. Each plaintiff consented to application of § 2513 of the Internal Revenue Code, allowing treatment of the gifts as having been made one-half by each plaintiff. The book value of True Oil on August 1, 1973 was $683,160.38, making the book value of each gift $54,653. Plaintiffs reported total gifts of True Oil interests of $218,612 and gift tax was paid on that amount.

On March 6, 1981, Internal Revenue Service sent a notice of deficiency to plaintiffs alleging that the interests transferred on August 1, 1973 had an increased value of $3,018,328. Each plaintiff was charged with a $457,342 deficiency. Plaintiffs paid the alleged deficiency and made claims for refund in that amount. The refund claims were disallowed by the Internal Revenue Service and this suit was filed. On December 31, 1981, plaintiffs paid the assessed interest on the alleged gift tax deficiency, in the amount of $258,846.17 each, totaling $517,692.34. Plaintiffs made claims for refund on the alleged interest, which claims were also disallowed by the Internal Revenue Service.

■ To resolve the question presented, a determination must be made regarding "fair market value" of the property in question. The term is defined as to gift tax in 26 C.F.R. § 25.2512–1 entitled, *Valuation of Property; in general.* The definition requires a willing buyer and a willing seller, with no compulsion to buy and reasonable knowledge of relevant facts. Fair market value is the net amount willingly paid when all these elements exist.

■ However, most valuations, including the one at hand, involve a host of addition-

al, complicating factors. Both parties frequently refer to Rev.Rul. 59–60 which offers guidance in the valuation of stocks in closely held corporations. The same factors are applicable to valuation in closely held partnerships. The revenue ruling lists the following as fundamental factors requiring careful analysis: nature and history of enterprise, general economic outlook, industry outlook, book value, financial condition of business, earning capacity, dividend-paying capacity, goodwill or other intangibles, sales of stock, size of stock block valued, and the market price of stocks in similar types of business. Rev.Rul. 59–60, Sec. 4. The ruling also specifically mentions restrictive agreements and notes that while an option price is not determinative of fair market value, it is a factor to be considered with other factors. Rev.Rul. 59–60, Sec. 8.

Defendant's expert witness regarding valuation testified as to the method used for the determination of the fair market value of the stock in True Oil. The testimony indicated that: 1) copies of the written agreement between the partners were available and considered, however, consideration was not given to the restrictive provision of the amended agreement (in response to a question by the Court, defendant's expert admitted that restrictions affect minority holdings and marketability of a stock interest and usually, absent such restriction, the value of the interest would be increased); 2) the valuation was done on the basis of passing one 32% interest instead of four 8% interests; 3) the fair market value was determined as if an arms-length sale had taken place; hypothetical terms were used with no consideration given to the actual buyer and seller; 4) the financial status of the company was analyzed extensively through use of balance sheets and plant analysis; depreciation, management, experience, and operational information were also considered and great emphasis was placed on valuing equipment and reserves; 5) this method of valuation was based on earnings and net asset value and did not make use of the discounting process for minority interests held or any other discounting factors, and no comparables

were used in this method; and, 6) several factors listed in Rev.Rul. 59–60 which existed in the case were not considered.

Plaintiffs also called an expert on valuation. Describing the method of valuation used by the plaintiffs to determine fair market value of the True Oil stock, this testimony included: 1) that the factors of Rev.Rul. 59–60 were applied as completely as possible to the circumstances of True Oil; 2) the nature of the business, the economic outlook in general and industry related, the book value, the financial condition of the business, earning capacity, size of stock sale and comparisons to similar companies were all considered; 3) in addition, information was considered concerning reserves, drilling records, articles of partnership, the management and employees, production trends, growth trends and profit trends; 4) the fair market value which was determined was discounted by the fact that the interest in question was a minority interest (four 8% interests), the limited marketability and liquidity because of the agreement restrictions, the lack of diversified assets and the required partner contribution.

It is clear from even a brief summary of the valuation methods, that plaintiffs' method of valuation considered several important factors ignored by defendant's method of valuation. Furthermore, defendant's insistence on hypothetical parties and circumstances does not allow for a realistic portrayal of the existing situation. Hypothetical analysis can be a valuable tool; however, when real considerations exist, those realities should not and cannot be ignored.

The restrictive provisions in the partnership agreement for True Oil must be considered in the valuation of interest in that stock. The restrictions imposed in this case are not merely right of first refusal or options. The restrictions are absolute. Interests *must* be sold by withdrawing partners and *must* be bought by remaining partners at book value.

It is wrong to ignore the agreement and factors which make the agreement necessary or desirable for the shareholder. *Bal-timore Nat'l Bank v. U. S.,* 136 F.Supp. 642 (D.C.Md.1955). Lack of marketability must be considered in determining fair market value. Even if fair market value is more than book value, the burden of a restrictive partnership agreement must be considered as a factor which usually depresses the share value. *Brodrick v. Gore,* 224 F.2d 892 (10th Cir. 1955); *Baltimore Nat'l Bank v. U. S.,* supra. A corporation's right of first refusal has a depressing effect on the value of the stock, and as mentioned earlier, the restriction in this case is *more* than a right of first refusal—it is absolute. The defendant's failure to make allowance against the value of the interest for the burden of the agreement restrictions results in an unfair and inaccurate determination of value. *U. S. v. Parker,* 376 F.2d 402 (5th Cir. 1967).

Taking into consideration all the facts and circumstances and the reasonable inferences to be drawn therefrom, this Court is of the opinion that the method of valuation used by the plaintiffs in this case offers a more complete and fair estimation of the fair market value to be used in the valuation of the 8% interests given as gifts to plaintiffs' children. Application of plaintiffs' valuation method results in a finding by this Court that the fair market value of each 8% interest was properly determined at $54,653.

This memorandum constitutes the findings of fact and conclusions of law and additional findings and conclusions are unnecessary.

Judgment will be entered in accordance with this memorandum.